RECEIVED

JUN - 7 2017

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| DERRICK COLEMAN | CIVIL ACTION NO. 6:15-2086 |
| VERSUS | JUDGE DOHERTY |
| HALCÓN RESOURCES CORPORATION, ET AL. | MAGISTRATE JUDGE WHITEHURST |

## MEMORANDUM RULING

Now pending before the Court is a motion for summary judgment [Doc. 36] filed by defendants, Halcón Resources Corporation and Halcón Operating Co., Inc. (collectively, "defendants").[1] Pursuant to their motion, defendants seek dismissal with prejudice of all claims asserted by plaintiff, Derrick Coleman[2], arguing plaintiff was the statutory employee of both defendants at the time of the incident sued upon, and therefore defendants are immune from suit in tort under Louisiana law. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

### I. Factual Background

Plaintiff filed this negligence suit against defendants for injuries he alleges he incurred in a workplace accident. Plaintiff, a floor hand employed by Pioneer Well Services, LLC ("Pioneer"), was part of a Pioneer crew performing well completion services on a well located at or near

---

[1] Both defendants are oil and gas exploration companies. [Doc. 36-5, ¶¶ 2-3; Doc. 36-12, ¶¶ 2-3] Halcón Operating Co., Inc. is a wholly-owned subsidiary of Halcón Resources Corporation. [Doc. 8, p. 1]

[2] Plaintiff is proceeding *pro se* in this matter.

Page 1 of 15

Woodville, Mississippi. [Id. at pp. 1-2; Doc. 36-5, p. 1; Doc. 36-7, p. 1] The well was operated by defendants; it was owned by a third party, HK TMS, LLC.[3]

Plaintiff contends he was replacing a nut on the wellhead when he slipped and landed on the pointed handle of a needle valve, resulting in bodily injuries.[4] [Doc. 1, p. 3, ¶ 8] Following the incident, plaintiff sought and received medical and indemnity benefits from Pioneer under the Louisiana Workers' Compensation Act ("LWCA"), La. R.S. 23:1020.1, *et seq.* [Doc. 36-4, ¶ 5; Doc. 36-12, ¶ 13] On July 21, 2015, plaintiff filed this suit against defendants, seeking general tort damages for negligence.[5] Defendants now seek summary judgment dismissing plaintiff's claims with prejudice, arguing they were plaintiff's statutory employers under the LWCA by virtue of a Master Service Contract ("MSC") between Pioneer and Halcón Operating Co., Inc., and therefore they are immune from tort liability as a matter of law.

## II. Standard of Review

"A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense - on which summary judgment is sought." Fed.R.Civ.P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is "material" if it "might affect the outcome of the suit under the governing law" of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that

---

[3]HK TMS, LLC is a subsidiary of Halcón Resources Corporation. [Doc. 28, pp. 7-8]

[4]According to Pioneer's documentation, the accident occurred while plaintiff "was standing on a valve trying to screw a nut on the bottom of the BOPs." [Doc. 36-9, p. 2]

[5]Jurisdiction in this matter is by diversity of citizenship.

a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* at § (c)(1).

As summarized by the Fifth Circuit:

When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Only when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party is a full trial on the merits warranted.

*Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994)(internal citations, quotation marks omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994). To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001).

### III. Choice of Law

Defendants assert Louisiana law is the substantive law applicable to plaintiff's claims. [Doc. 36-1, p. 5] Plaintiff does not contest the application of Louisiana law. Federal courts sitting in diversity must apply the conflict of law provisions of the forum state. *Burdett v. Remington Arms Company, L.L.C.*, 854 F.3d 733, 735 (5th Cir. 2017). Thus, this Court must apply Louisiana's choice of law principles to determine which state's substantive law will apply.

Louisiana's general conflict of law provision for delictual and quasi-delictual obligations states as follows[6]:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Louisiana Civil Code art. 3542.[7] The policies imported into article 3542 from article 3515 are: "the relationship of each state to the parties and the dispute; and . . . the policies and needs of the

---

[6]"Louisiana is a civil law jurisdiction: the civilian term 'delictual obligation' means a tort obligation." *Duhon v. Union Pacific Resources Co.*, 43 F.3d 1011, 1014, n.3 (5th Cir. 1995).

[7]Louisiana Civil Code articles 3543 through 3546 provide more specific conflict of law rules applicable to delictual and quasi-delictual obligations, and those rules dictate the appropriate choice of law in certain scenarios. La. Civ. Code art. 3542, comment (b). When applicable, those articles generally prevail over the more generalized rule set forth in article 3542. *Id.* While the heading of article 3544 - "Issues of loss distribution and financial protection" - would seem to indicate it is a more specific rule applicable to this matter, the text of the rule does not apply to the particular facts before this Court. La. Civ. Code art. 3544; *see also id.* at comment (c)("[T]his Article does not cover situations in which the wrongful conduct, the resulting injury, and the domicile of each party are each located in different states. Such cases are, therefore, governed by Article 3542, the residual Article."). Accordingly, article 3542, as the residual article, governs in this matter. La. Civ. Code art. 3542, comment (b)("In its residual role, this Article applies to all cases and issues that are not included within the scope of Articles 3543-3546.")

interstate system, including the policies of upholding the justified expectations of the parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state." *Arabie v. CITGO Petroleum Corp.*, 89 So.3d 307, 315-16 (La. 2012).

In this matter, the conduct and injury occurred in Mississippi. Plaintiff is domiciled in Louisiana. Halcón Resources Corporation is a domiciliary of Delaware (its state of incorporation) and Texas (its principal place of business), and Halcón Operating Co., Inc. is a domiciliary of Texas (its state of incorporation and principal place of business.) For purposes of Louisiana's conflict of laws, "a juridical person may be treated as a domiciliary of either the state of its formation or the state of its principal place of business, whichever is most pertinent to the particular issue." La. Civ. Code art. 3518.

In comparing the policies and interests of Mississippi, Louisiana, Texas and Delaware, it is apparent that Louisiana's interests and contacts are greatest and would be most seriously impaired if its laws were not applied to the instant dispute. Delaware's only interest in this matter is that it is the state of incorporation of Halcón Resources Corporation. Texas' only interest is that it is the principal place of business of both defendants, and it is the state of incorporation of Halcón Operating Co., Inc. Mississippi presumably has an interest in deterring wrongful conduct and repairing the consequences of injurious acts.

Louisiana's interests are stronger by comparison. Plaintiff is a Louisiana domiciliary, hired by Pioneer in Louisiana and assigned to Pioneer's Louisiana office. [Doc. 36-3, p. 2] Both Halcón entities and Pioneer were authorized to do business, and doing business, within the State of Louisiana. [Doc. 1, pp. 1-2] Plaintiff received worker's compensation benefits from Pioneer in accordance with Louisiana's workers' compensation scheme. [Doc. 36-4, ¶ 5; Doc. 36-10] "Louisiana has an interest in protecting both citizens who are recruited and hired in Louisiana and

employers that are doing business in the state." *Carriere v. Chandeleur Energy*, 42 F.3d 642, *4 (5th Cir. 1994). "Louisiana has an interest in protecting foreign corporations in order to create a friendly business atmosphere in which to promote commerce and industry." *Id.* "Louisiana has an interest in the consistent and comprehensive implementation of its workers' compensation laws." *Id.* Finally, "as articulated by article 3515, the policies and needs of the interstate system, which includes the expectations of the parties and the minimization of adverse consequences that might follow from subjecting a party to the law of more than one state are best served in this dispute by the application of Louisiana law." *Id.*; *see also Cain v. Altec Industries, Inc.*, 236 Fed.Appx. 965, 970 (5th Cir. 2007).

In sum, after comparing the policies and interests of Louisiana, Mississippi, Texas and Delaware, the Court concludes the policies and interests of Louisiana would be more seriously impaired if Mississippi, Texas or Delaware law were applied to this dispute, than would Mississippi, Texas or Delaware's policies if Louisiana's law were applied. Accordingly, the Court will apply Louisiana's substantive law to the claims asserted in this matter by plaintiff.

### IV. Louisiana Workers' Compensation Act

Under the LWCA, an employer is liable for compensation benefits to an employee who is injured as a result of an accident arising out of and in the course of employment. La. R.S. 23:1031(A). Generally, the recovery of workers' compensation is the employee's exclusive remedy against his or her direct employer and any "principal." La. R.S. 23:1032(A)(1)(a)-(b). A "principal" is defined as "any person who undertakes to execute any work which is a part of his trade, business, or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof." *Id.* at (A)(2). Section 1061 of the LWCA provides, in pertinent part:

> A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" . . . undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him. . . . For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.
>
> (2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.
>
> (3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

La. R.S. § 23:1061.

As set forth above, there are two situations in which a principal's relationship with a contractor leads to a statutory employer relationship and limited liability. *Id.*; *see also Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir 2015). "First, the principal may contract to perform work and then subcontract all or a portion of that work to another (the 'two contract theory')." *Wright* at 732-33; La. R.S. 23:1061(A)(2). "Second, the principal may enter into a written contract 'recognizing' it as the statutory employer of the other party's employees." *Wright* at 733; La. R.S. 23:1061(A)(3). In the latter circumstance, a contract recognizing a statutory employer relationship

creates "a rebuttable presumption" of such a relationship that "may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services." La. R.S. 23:1061(A)(3).

V. Analysis

A. Whether Halcón Operating Co., Inc. Was Plaintiff's Statutory Employer

Plaintiff argues Halcón Operating Co., Inc. is not his statutory employer for the following reasons: (1) the Master Service Agreement is between Halcón Operating Co., Inc. and Pioneer Wireline Services, LLC - not Pioneer Well Services, LLC; (2) the declaration of Tim McDonald, submitted by defendants with the MSC and Amendment, is unsworn; (3) the remaining declarations submitted with the MSC and Amendment, though sworn, "are not from individuals who have any ability to attest to the truthfulness of the document"; and (4) plaintiff's duties were not essential to the ability of Halcón Operating Co., Inc. to generate or provide its goods, products or services. [Doc. 38, pp. 1-2]

Defendants have submitted the Master Service Agreement between Halcón Operating Co., Inc. and Pioneer Wireline Services, LLC, and they have submitted an Amendment to the Master Service Agreement dated August 29, 2012. That amendment explicitly adds Pioneer Well Services, LLC as a "Contractor" to the Master Service Agreement. [Doc. 36-5, p. 33] Plaintiff acknowledges the foregoing facts, but argues "the Declarations in support of this contention do not factually state that such Amendment is a true and correct copy of any amendment entered into between the parties," one of the declarations is unsworn, and the others are submitted by persons who are not competent to authenticate the MSC and its amendment. [Doc. 38, p. 1]

In connection with submission of the Master Service Contract and the August 29, 2012 Amendment, defendants submitted the Declaration of Tim McDonald, who states in pertinent part

as follows:

> I, Tim McDonald, make this declaration pursuant to 28 U.S.C. § 1746, and state as follows:
>
> 1. "My name is Tim McDonald. I am the Director of Risk Management for Halcón Resources Corporation ("Halcón Resources").... *The statements made in this declaration are true and correct and are within my personal knowledge.*
>
> 2. Halcón Resources is an independent energy company focused on the acquisition, production, exploration and development of oil and gas. . . .
>
> 3. Halcón Operating Co., Inc. ("Halcón Operating"), a wholly-owned subsidiary of Halcón Resources, is also focused on the acquisition, production, exploration and development of oil and gas. . . .
>
> 4. In order for Halcón Resources and Halcón Operating (collectively "Halcón") to generate its products, it is often required to contract with oilfield service companies to drill, complete and maintain wells operated by Halcón.
>
> 5. *Attached to this Declaration is a true and correct copy of the August 15, 2012 Master Service Contract between Halcón and Pioneer Wireline Services, LLC and its affiliates. An August 29, 2012 Amendment to the Master Service Contract identifies "Pioneer Well Services, LLC" as an affiliate of Pioneer Wireline Services, LLC.*
>
> . . . .
>
> 7. *I declare under penalty of perjury that all of the statements in this declaration are true and correct."*

[Doc. 36-5, pp. 1-2 (emphasis added)][8]

Mr. McDonald is a signatory to both the Master Service Agreement and the Amendment. [Id. at pp. 14, 33] 28 U.S.C. § 1746 permits unsworn declarations to substitute for an affiant's oath if the

---

[8] A similar, notarized affidavit was submitted along with the MSC and Amendment by Mallory Fuentes, Contracts Administrator for Pioneer Energy Services Corp. (the parent company of both Pioneer Wireline Services, LLC and Pioneer Well Services, LLC). [Doc. 36-7, ¶¶ 1, 3]

statement contained therein is made in writing, "under penalty of perjury," and verified as "true and correct." 28 U.S.C. § 1746; *see also Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988). In light of the foregoing, the Court finds the Master Service Contract and the Amendment thereto are properly authenticated. The Court further finds the Amendment added Pioneer Well Services, LLC as a "Contractor" under the Master Service Agreement.[9] *See* Fed. R. Civ. P. 56(c)(4). In light of the foregoing, the Court finds Pioneer Well Services, LLC was a party to the Master Service Contract.

The MSC explicitly recognizes Halcón Operating Co., Inc. as plaintiff's statutory employer:

> <u>Louisiana Workers' Compensation Insurance</u>. In all cases where Contractor's[10] employees (defined to include Contractor's and its subcontractor's direct, borrowed, special, or statutory employees) are covered with respect to the work by the Louisiana Workers' Compensation Act (La. R.S. 23:1021 *et seq.*), the parties agree that all work performed by Contractor and its employees pursuant to this Contract are an integral part of and are essential to the ability of Halcón[11] to generate Halcón's goods, products and services for purposes of La. R.S. 23:1061(a)(1). Furthermore, the parties agree that Halcón is the statutory employer of Contractor's employees solely for the purposes of La. R.S. 23:1061(a)(3) and not for any other purposes whatsoever. Irrespective of Halcón's status as the statutory employer or special employer (as defined in La. R.S. 23:1031©) of Contractor's employees, Contractor agrees to remain primarily responsible for the payment of Louisiana Workers' Compensation benefits to its employees, and shall not be entitled to seek contribution for any such payments from Halcón. Further, Contractor agrees to defend, indemnify and hold harmless Halcón from any and all claims for compensation benefits by Contractor's employees against Halcón and hereby waives any right of Contractor or of Contractor's insurers to seek reimbursement of any compensation benefits owed or

---

[9] While both Mr. McDonald and defense counsel state the Amendment "identifies 'Pioneer Well Services, LLC' as an affiliate of Pioneer Wireline Services, LLC," the Amendment actually states, "the MSC is amended by adding thereto and incorporating therein the following Contractor affiliates as 'Contractor': Pioneer Well Services, LLC. . . ." [Doc. 36-5, p. 33] Whether the Amendment identifies Pioneer Well Services, LLC as an "affiliate" or a "Contractor" would seem to be a distinction without a difference, however, as the MSC "is made by and between Halcón Operating Co., Inc. . . . and Pioneer Wireline Services, LLC *and its affiliates* (hereafter referred to as '<u>Contractor</u>')." [Doc. 36-5, p. 3]

[10] "Pioneer Wireline Services, LLC and its affiliates" are referred to throughout the contract as "Contractor." [Doc. 36-5, p. 3]

[11] "Halcón" refers to "Halcón Operating Co., Inc." [Id. at 3]

paid.

[Doc. 36-5, p. 4] Pursuant to La. R.S. 23:1061(A)(3), a rebuttable presumption thus arises that Halcón Operating Co., Inc. is plaintiff's statutory employer. This presumption is only overcome by showing the work plaintiff was performing at the time of the accident was "not an integral part of or essential to" Halcón Operating Co., Inc.'s ability to generate its goods, products, or services. La. R.S. 23:1061(A)(3); *see also Duncan v. Dow Pipeline Co.*, 952 So.2d 884, 888 (La.App. 3 Cir. 2007).

> In an attempt to overcome the presumption, plaintiff offers the following argument:
>
> [My] job duties were not essential to the ability of Halcon to generate or provide its goods, products, or services. I was one of several floorhands hired by Pioneer to ensure the work area remained clean. As such, my job was only incidental to Halcon's overall production. It was not so significant that my performance or failure to perform would have prevented Halcon from carrying out any of its business services. . . . Halcon is required to show that the work I performed was absolutely necessary to its ability to generate its goods, services or products. They cannot make such showing.

[Doc. 38, p. 2]

The evidence in the record - namely, the MSA, the declaration of Tim McDonald, and the uncontested facts - all show the well completion services provided by Pioneer were in furtherance of Halcón Operating Co., Inc.'s business and were integral to its ability to generate its products.[12] [Doc. 36-5, pp. 1-4; Doc. 36-12, ¶¶ 4, 11, 14] As plaintiff has put forth no competent summary judgment *evidence* sufficient to defeat the presumption that Halcón Operating Co., Inc. was plaintiff's statutory employer, the Court finds summary judgment in favor of Halcón Operating Co., Inc. is warranted.

---

[12]*See also Blanks v. Murco Drilling Corp.*, 766 F.2d 891, 896 (5th Cir. 1985)(mudlogger allegedly injured by negligence of another contractor's employee while moving a pipe joint at a well site was the statutory employee of well owner and operator, as "all activities relating to putting the well into operation were within the trade, business and occupation" of the owner/operator).

**B. Whether Halcón Resources Corporation Was Plaintiff's Statutory Employer**

Plaintiff argues Halcón Resources Corp. cannot be deemed his statutory employer, as it is not identified as a party to the Master Service Contract, and "[n]either the Contract nor the Amendment has any language stating that the documents extend to Halcón Operating Co., Inc.'s affiliates, subsidiaries or parents with regard to the statutory employer issue." [Doc. 38, p. 2] In responses, defendants contend "federal and state case law confirms that the statutory-employer provision/immunity extends to parent and affiliate companies, and, therefore, both Halcón defendants are entitled to statutory-employer immunity. . . ." [Doc. 39-1, p. 2] Thus, the issue which must be decided is whether Halcón Resources Corp. qualifies as a "statutory employer," even though it did not sign the MSC and was not expressly identified in the statutory employer provision or elsewhere.

In support of their argument that Halcón Resources Corp. should be deemed plaintiff's statutory employer in light of its status as the parent corporation or an affiliated company of Halcón Operating Co., Inc., defendants rely upon the following decisions: *Wright v. Excel Paralubes*, 807 F.3d 730, 732 (5th Cir. 2015), *St. Angelo v. United Scaffolding, Inc./X-Serv., Inc.*, 40 So.3d 365 (La.App. 4 Cir. 2010), and *Johnson v. Motiva Enters., LLC*, 128 So.3d 483 (La.App. 5 Cir. 2013). The Court finds these cases to be distinguishable. In *St. Angelo*, the non-signing party to a contract (who was granted statutory employer status), was explicitly referenced in the contract and the contract was explicitly entered into "on behalf of" the non-signing party. *Id.* at 372. In *Johnson*, the statutory employer provision applied to "BUYER or any of its subsidiaries or affiliates," and the buyer's affiliates were specifically identified by name in the contract. *Id.* at 489.

The *Wright* case provides defendant's strongest support, but nevertheless is distinguishable. In *Wright*, the Fifth Circuit, making an "*Erie* guess," addressed whether a non-operating partner in

a joint venture qualified as a statutory employer, where the non-operating partner did not sign the MSC, and the MSC did not designate the non-operating partner as a statutory employer. The Court held the MSA as a whole extended statutory employer status to the non-operating partner based upon the reasons which follow. First, the section of the MSC addressing "Risk Structure" provided, "To the maximum extent permitted by applicable law, the exclusions of liability and indemnities . . . above and *elsewhere in this Agreement* shall extend to the employees, officers and directors of each party and to their respective Affiliates. . . ." *Wright* at 733 (emphasis in original). The Court then reasoned the statutory employer provision (found "elsewhere" in the MSC) amounted to "an exclusion of liability or indemnity protection" for the non-operating partner because, were the non-operating partner not a statutory employer, it could be sued in tort, and as a result, "issues of both liability and indemnity would arise" between the non-operating partner and plaintiff's direct employer. *Id.* at 735. Finally, the Court found its interpretation of the MSC "reflects economic realities and efficiency," as "[m]ost joint venturers would expect the non-operating partner in a joint venture to enjoy the same statutory employer status the operating partner agrees to." *Id.* at 736.[13]

---

[13]Justice Costa issued a strong dissent in *Wright*, stating in part:

> The very nature of an *Erie* guess means that one cannot disagree with certitude. The majority opinion provides reasoned arguments for why the Supreme Court of Louisiana might rule in favor of Excel's position if it ever confronts this situation. But one thing is certain. AS the majority opinion recognizes, it is extending statutory employer status beyond what any Louisiana state court has ever recognized. No case prior to this one has assigned such status to a party that is neither "mentioned in the written services contract [n]or listed as a subsidiary or affiliate in it." . . .
>
> That is especially true when that extension of state law requires us to rely on "inferences" drawn from various provisions of a contract, rather than follow the contract's express terms. Although the 1997 amendments to the Louisiana Worker's Compensation Act "establish a more liberal standard for establishing statutory employer status," that comparative observation is not the same thing as saying that the amended standard should be construed liberally or that courts have license to broadly construe contracts beyond what the plain language supports.

*Wright* at 737 (internal citations omitted).

In the matter before this Court, the MSC states "the parties agree that Halcón is the statutory employer of [Pioneer's] employees...." [Doc. 36-5, p. 4] By the terms of the MSC, "Halcón" refers solely to "Halcón Operating Co., Inc." [Id. at 3 ("Halcón Operating Co., Inc.... (hereafter referred to as '<u>Halcón</u>')....."] No reference is made to application of the statutory employer provision to Halcón Operating Co., Inc.'s parent, affiliates, etc. While the Court recognizes the following section of the MSC (Section 4, addressing releases, indemnities and insurance) defines "Company Group" as "Halcón, its parent, subsidiaries, [and] affiliated companies...," the MSC does not use the term "Company Group" in the statutory employer provision.[14] Thus, the statutory employer provision in the MSC would appear to apply to Halcón Operating Co., Inc. only.

Moreover, a joint venture (which is a form of specialized partnership) and a corporation are two different and distinct legal entities; the rights and obligations of a partner in a joint venture are not at all similar to the rights and obligations of a stockholder (such as Halcón Resources Corp.) in a corporation. *See e.g. Monteleone v. Airey*, 57 So.2d 257, 261 (La.App. 1952). Under Louisiana law, a corporate entity is a juridical person with a "personality ... distinct from its members." La. Civ. Code art. 24. A corporation remains a distinct legal entity even though another corporation obtains all of its corporate stock. *National Oil Works v. Korn Bros.*, 114 So. 659, 660 (La. 1927). Thus, a parent corporation is a legal entity separate and distinct from its wholly-owned subsidiary, even where the two have mutual dealings. *Bujol v. Entergy Services, Inc.*, 922 So.2d 1113, 1127 (La. 2004); *Stanley v. Airgas-Southwest, Inc.*, 2017 WL 1807984 (La.App. 1 Cir. 2017). "The mere fact that two corporations are affiliated in some way (e.g. parent-subsidiary) does not mean that a contract with one of those corporations is a contract with the other." *Cable & Connector Warehouse, Inc. v.*

---

[14] Nor does Section 4 contain language similar to that which the Fifth Circuit relied upon in *Wright* - namely, "the exclusions of liability and indemnities ... above and *elsewhere in this Agreement* shall extend to the employees, officers and directors of each party and to their respective Affiliates...." *Wright* at 733 (emphasis in original).

*Omnimark, Inc.*, 700 So.2d 1273, 1276 (La.App. 4 Cir. 1997). By contrast, in a joint venture, a partner may enter into a contract in his own name and still bind the venture if the venture "benefits by the transaction or the transaction involves matters in the ordinary course of its business." La. Civ. Code art. 2816; *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 867 So.2d 651, 663 (La. 2004); *Autin's Cajun Cookery Joint Venture v. Kroger Co.*, 1989 WL 133103, *2 (E.D.La.).

Because the Master Service Contract in this matter contains no language extending statutory employer status to Halcón Resources Corp., and because the jurisprudence relied upon by defendants does not stand for the proposition that a parent or affiliated company becomes a party to a contract solely by virtue of its status as a parent or affiliate of a party to a contract, the Court finds Halcón Resources Corp. is not entitled to statutory employer status under the LWCA. Accordingly, defendants' motion is denied to the extent it seeks dismissal of the tort claims brought against Halcón Resources Corp.

## VI. Conclusion

For the reasons set forth above, the motion for summary judgment [Doc. 36] submitted by Halcón Resources Corporation and Halcón Operating Co., Inc. is GRANTED IN PART and DENIED IN PART. The motion is GRANTED to the extent it seeks dismissal with prejudice of plaintiff's claims asserted against Halcón Operating Co., Inc.; the motion is DENIED to the extent it seeks dismissal of plaintiff's claims asserted against Halcón Resources Corporation.

THUS DONE AND SIGNED this __7__ day of June, 2017.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE